IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSHUA RAY LANIGAN,                              OPINION AND ORDER

              Plaintiff,                              15-cv-474-bbc

      v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Joshua Ray Lanigan has filed this action seeking judicial review of the social security commission's denial of his application for disability benefits and supplemental social security income.  Plaintiff contends that the commission erred in two respects when denying his application: (1) the administrative law judge failed to account for plaintiff's moderate limitations in concentration, persistence and pace; and (2) the vocational testimony offered at the hearing was unsupported by substantial evidence because the expert failed to lay a proper foundation for his testimony.  Plaintiff requests that the case be remanded for additional proceedings so that these alleged errors can be corrected.

After reviewing the parties' briefs and the record before the administrative law judge, I conclude that remand is not warranted. Although the administrative law judge did not specifically refer to plaintiff's problems with concentration, persistence and pace, these problems were nevertheless incorporated into the hypothetical questions posed to the

1

vocational expert, who clearly was aware of these limitations.  Moreover, plaintiff waived his objections both to the form of the hypothetical question and the vocational expert's testimony by failing to raise these objections at the hearing.  Plaintiff cannot sit idle during a hearing and then demand that the entire matter be remanded to correct technical errors he could have raised at the hearing or otherwise before a decision was rendered.  Accordingly, I am upholding the administrative law judge's decision.

RECORD FACTS

A. <u>Background</u>

Plaintiff applied for disability insurance benefits and supplemental social security income in March 2012.  In his applications, plaintiff stated that he had been disabled since May 28, 2009 because of back and neck pain, depression and anxiety.  Plaintiff's application was denied initially on June 11, 2012 and upon reconsideration on March 15, 2013. Plaintiff then requested a hearing, which was held on May 14, 2013 before Administrative Law Judge Joseph D. Jacobson in Madison, Wisconsin.  Plaintiff appeared at the hearing and was represented by counsel.  Allen J. Noll, an impartial vocational expert, also testified at the hearing.  After the hearing, the administrative law judge issued a 10-page decision concluding that plaintiff was not disabled.  This decision became the final decision of the commissioner on May 27, 2015 when the Appeals Council denied plaintiff's request for review.  Plaintiff filed suit on July 31, 2015 challenging the Appeals Council's decision.

B. <u>Medical Evidence</u>

On May 28, 2009, plaintiff fell while pushing a heavy cart at work, sustaining injuries to his lower back and neck that caused him significant pain, stiffness and difficulty moving. He saw doctors on multiple occasions following the injury for both pain management and physical therapy.  Although these interventions helped, they did not resolve his symptoms. Despite his back problems, however, plaintiff continued to work in low-wage unskilled jobs. His lower back pain continued and he eventually was given a diagnosis of "moderate multilevel degenerative disc disease."

In late 2011, plaintiff was told he had diabetes. When he saw his doctor on January 26, 2012, he indicated that he was struggling with depression and anxiety, which he attributed to his diabetes diagnosis and the fact that he had recently lost his job.  He saw a number of mental health professionals over the ensuing months and complained of "low self-worth," suicidal thoughts and being "somewhat limited in his social outlet."  On July 24, 2012, his diagnosis was "major depression with anxiety disorder" and "possibly atypical bipolar disorder."  However, plaintiff reported that his mental health problems improved with psychological help and anti-anxiety medications.

C. <u>Hearing Testimony</u>

At the administrative hearing conducted on May 14, 2013, plaintiff testified that he was 40 years old, had a high school education and was currently working part-time at a Michael's retail store. He testified that he worked between 15 and 22 hours each week

unloading goods from trucks, stocking the store and setting up displays. Although he interacted with customers on occasion, he found such interactions stressful.  Plaintiff also testified that from 2011-12, he had held a full-time seasonal position at Target.  Prior to that, plaintiff worked full-time for approximately twelve years as an equipment buffer and general laborer in an industrial setting.

With respect to his physical health, plaintiff testified that he had persistent back pain. He said that in order to get through a day of work, he needed various over-the-counter pain medications and muscle relaxers.  He testified that he had significant difficulty sitting in one place for long periods of time, but he could stand on his feet with relative ease so long as he could move around and stretch.  He also said he could lift 50 pounds occasionally and could lift 20 pounds regularly with ease.

When questioned about his mental health problems, plaintiff's testimony related primarily to his anxiety around people. He said he would frequently have panic attacks and had a difficult time in social situations.  He testified that while at work, he had to excuse himself often during his shifts, particularly when he had to interact with customers. However, he testified that his mental health problems never caused him to miss a shift at his then-current job. Plaintiff also testified that he occasionally had "black outs" and would engage in conduct that he could not remember.  During one of these incidents, he reportedly shot out car windows with a pellet gun and was arrested.

The administrative law judge then questioned Andrew Noll, an impartial vocational expert.  Noll testified that he had listened to plaintiff's testimony (in fact, Noll asked

4

plaintiff his own questions at one point during plaintiff's testimony), reviewed plaintiff's medical file and familiarized himself with plaintiff's vocational background. The administrative law judge then asked Noll hypothetical questions regarding the availability of jobs in Wisconsin for people with plaintiff's abilities.

First, the administrative law judge asked Noll to assume that plaintiff could work at "the light exertional level," could occasionally stoop, crouch, kneel and crawl, and could perform only "simple, routine, repetitive tasks." He then asked whether such an individual could perform any of plaintiff's past relevant work. Noll testified that those skills would not be enough to perform plaintiff's past relevant work because that work was semi-skilled, but that there were a number of other jobs in the region that plaintiff could perform. In particular, Noll testified there were approximately 300 packer positions, 650 machine operator positions and 2,300 factory-related inspector, tester or sorter positions.

The administrative law judge then further qualified the hypothetical. He asked Noll to assume plaintiff also needed to be "off task 10 percent of the work day" and needed a "low-stress job" that did not involve piece work or fast-moving assembly line work. He also asked Noll to assume that plaintiff could tolerate only "occasional decision-making," "occasional changes in the work setting" and "occasional interaction with the public and coworkers." Noll testified that with these qualifications, the number of jobs would be reduced by between 30% to 50%, but there were still a significant number of positions available.

5

D. The Administrative Law Judge's Decision

In his decision, the administrative law judge performed the required five-step sequential analysis set forth in 20 C.F.R. § 404.1520. At step one, he determined that plaintiff had not engaged in substantial gainful activity since May 28, 2009, the alleged onset date of his disability. At step two, he determined that plaintiff suffered from degenerative disc disease, obesity, affective disorder and anxiety disorder. The administrative law judge determined that these impairments were "severe" within the specialized meaning of the Social Security Act because in combination they significantly interfered with plaintiff's ability to engage in basic work activities. At step three, he concluded that plaintiff's impairments, although severe, did not meet or medically equal any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.

With respect to step four, the administrative law judge determined that plaintiff generally had the residual functional capacity to perform the type of light work defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). However, the administrative law judge also noted that plaintiff's ability to perform this work was subject to various additional restrictions. In particular, plaintiff could stoop, crouch, kneel or crawl only occasionally; he was limited to "simple, routine, repetitive tasks"; he required a "low stress" job; he could interact with the public and coworkers only occasionally; and he could not perform tandem tasks. Additionally, plaintiff was unable to do piece work or assembly line work and needed to be "off task" 10% of the work day.

At the fifth and final step, the administrative law judge concluded that plaintiff could

no longer perform his past relevant work as a buffing machine operator or general laborer. However, the administrative law judge also found that, even with his additional restrictions, plaintiff could perform a variety of jobs typically classified as "light work." This determination was based on Noll's testimony at the hearing regarding the number of jobs suitable for someone with plaintiff's limitations and residual functional capacity. Accordingly, the administrative law judge concluded that plaintiff was "not disabled" for purposes of obtaining social security benefits.

OPINION

Plaintiff contends that this case should be remanded for further proceedings for two reasons, both of which relate to the administrative law judge's finding at step five that plaintiff was capable of performing a sufficient number of jobs in the national economy. First, plaintiff argues that the administrative law judge erred by presenting the vocational expert with a hypothetical question that did not reflect plaintiff's moderate limitations in concentration, persistence and pace. Second, plaintiff argues that the administrative law judge erred by relying on the vocational expert's testimony regarding the number of suitable positions because this testimony lacked an adequate foundation. I disagree with both of plaintiff's arguments and conclude that the administrative law judge's finding at step five was supported by substantial evidence.

A. <u>The Vocational Expert's Testimony Accounted for Plaintiff's Moderate Limitations in Concentration, Persistence and Pace</u>

At step five of the five-step framework for evaluating claimant's alleged disabilities, an administrative law judge must consider whether, based on a claimant's residual functional capacity, age, education and work experience, the claimant can make an adjustment to other work. Although they are not required to do so, administrative law judges often rely on vocational experts' opinions regarding the type of jobs suitable for a claimant and how many such jobs exist in the applicant's state. However, such testimony qualifies as "substantial evidence" sufficient to support a finding that a claimant can make an adjustment to other work only when it accurately accounts for a claimant's limitations. <u>Simila v. Astrue</u>, 573 F.3d 503, 520-21 (7th Cir. 2009). Plaintiff contends that Noll's testimony did not qualify as "substantial evidence" sufficient to support the administrative law judge's step-five conclusion because it was offered in response to a hypothetical question that failed to reflect plaintiff's moderate limitations in concentration, persistence and pace.

The Court of Appeals for the Seventh Circuit has held consistently that administrative law judges are required to orient a vocational expert to the totality of a claimant's limitations, <u>Simila</u>, 573 F.3d at 520; <u>Indoranto v. Barnhart</u>, 374 F.3d 470, 474 (7th Cir. 2004), including limitations related to the claimant's concentration, persistence and pace. <u>O'Connor-Spinner v. Astrue</u>, 627 F.3d 614, 619 (7th Cir. 2010); <u>Stewart v. Astrue</u>, 561 F.3d 679, 684 (7th Cir. 2009); <u>Kasarsky v. Barnhart</u>, 334 F.3d 539, 544 (7th Cir. 2003). Ensuring that a vocational expert is properly oriented to a claimant's limitations is not complicated: it is enough to simply inform the expert in perfunctory terms that the

claimant has "limitations in concentration, persistence and pace" to some certain degree. O'Connor-Spinner, 627 F.3d at 620-21 ("[F]or most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the [vocational expert's] attention on these limitations . . . ."). In this case, the administrative law judge did not use the terms "concentration, persistence and pace" in his hypothetical. However, although it may be the most efficient means of orienting a vocation expert to a claimant's limitations, there is no per se requirement that these specific terms be used. Id. at 619 ("We have not insisted, however, on a per se requirement that this specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases"). After reviewing the record as a whole, I conclude that Noll had an adequate understanding of plaintiff's problems with concentration, persistence and pace, even if he did not arrive at this understanding by the customary route sanctioned by the court of appeals.

First, the court of appeals has noted that remand is often unnecessary despite the administrative law judge's failure to specifically refer to a claimant's difficulties with concentration, persistence or pace, when the vocational expert has "independently reviewed the medical record or heard testimony directly addressing those limitations." O'Connor-Spinner, 627 F.3d at 619. In this case, Noll testified that he had independently reviewed plaintiff's medical file, which discussed the nature and extent of his limitations with concentration persistence and pace. Moreover, Noll was present for plaintiff's hearing and heard plaintiff's testimony regarding how his limitations affected his ability to perform at work—both in his previous positions (which he lost for business-related reasons, not

9

disability-related reasons) and his then-current retail position. As the regulations themselves point out, "[l]imitations in concentration, persistence, or pace are best observed in work settings." 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00(C)(3). Accordingly, by listening to plaintiff's testimony about his ability to perform in his past and then-current work, Noll had a far more nuanced understanding of plaintiff's limitations than he would have had if the administrative law judge had simply used the vague and superficially meaningless terms plaintiff contends he should have used.

Second, the "alternative phrasing" used by the administrative law judge was adequate to convey the extent of plaintiff's limitations related to concentration, persistence and pace. O'Connor-Spinner, 627 F.3d at 618. Specifically, the administrative law judge asked Noll to assume that plaintiff needed to be "off-task 10 percent of the work day in addition to regularly scheduled breaks" and could not perform "piece work or fast-moving assembl[y] line type work." When read in context and alongside plaintiff's testimony regarding how he functioned at work, it is clear that these qualifications were intended to incorporate plaintiff's mental health limitations discussed throughout the hearing. For example, plaintiff's problems with concentration and persistence prompted the administrative law judge to inquire about jobs in which plaintiff could be off task for 10 percent of the day; and his exclusion of jobs involving "piece work" or "fast-moving assembl[y] line type work" was intended to address plaintiff's problems with persistence and pace. See Britton v. Astrue, 521 F.3d 799, 802 (7th Cir. 2008) (capturing moderate concentration, persistence and pace limitations by inquiring as to jobs that involved limited contact with public and interaction

10

with coworkers); <u>Arnold v. Barnhart</u>, 473 F.3d 816, 820 (7th Cir. 2007) (capturing concentration, persistence and pace limitations by inquiring as to jobs that involved low production standards); <u>Schmidt v. Astrue</u>, 496 F.3d 833, 844-45 (7th Cir. 2007) (capturing concentration, persistence and pace limitations by inquiring as to "low stress" jobs).

Plaintiff concedes that these limitations related to the amount of time he must be "off task" and his inability to perform piece work or assembly line work "may address" issues with concentration, persistence and pace.   However, plaintiff contends that the administrative law judge failed to explain how he arrived at these specific limitations.  In particular, plaintiff argues that the administrative law judge failed to explain how he determined that plaintiff needed to be "off task" 10% of the time, as opposed to 5% or 15%. This argument is unavailing for at least two reasons.  First, plaintiff fails to recognize that the off-task limitation was generally consistent with plaintiff's testimony regarding the frequency with which he would "excuse himself" and take unscheduled breaks at his then-current retail job.  Second, plaintiff cannot point to any evidence that a physician found that plaintiff needed to be off task more than 10% during the workday.  A.R. 21 ("[T]he record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision."). In fact, plaintiff cites no evidence that a physician found that he had to be off-task *at all*, so failing to explain why he adopted a 10% off-task limitation (as opposed to a 5% or 15% off-task limitation) does not require a remand.  <u>Castile v. Astrue</u>, 617 F.3d 923, 927 (7th Cir. 2010) ("It was because of and not in spite of Castile's testimony that the ALJ limited her to

a more restrictive residual functional capacity finding than any physician on the record.");

Rice v. Barnhart, 384 F.3d 363, 370-71 (7th Cir. 2004) ("More importantly, there is no

doctor's opinion contained in the record which indicated greater limitations than those

found by the ALJ.").

Third, the court of appeals has frequently upheld hypothetical questions aimed at

identifying types of jobs that are unlikely to exacerbate certain symptoms or problems that

are ultimately the root cause of a claimant's problems concentrating, persisting or keeping

pace. O'Connor-Spinner, 627 F.3d at 619.   For example, if a claimant's difficulty

concentrating, persisting or keeping pace is attributable to back pain, and the claimant

experiences back pain only when standing for extended periods of time, it is unnecessary to

refer specifically to "concentration, persistence and pace" if the hypothetical is designed to

identify jobs the claimant can perform while sitting down.   Plaintiff's moderate limitations

in concentration, persistence and pace were attributed to his anxiety, depression and

difficulty interacting with other people.   A.R. 94 ("Based on [claimant's] anxiety and

depression, as described below, it is reasonable to find that the [claimant] may be moderately

limited in several areas."); A.R. 108 ("Based on the [claimant's] anxiety and depression, as

described it is reasonable to find that the [claimant] may be moderately limited in several

areas of [concentration, persistence and pace].").   Accordingly, it was appropriate for the

administrative law judge to formulate a hypothetical that restricted plaintiff to jobs involving

"low-stress, repetitive tasks" that did not require him to frequently interact with the public.

Johansen v. Barnhart, 314 F.3d 283 (7th Cir. 2002) (upholding hypothetical question

restricting petitioner to "low-stress, repetitive work" when plaintiff's disability was related to depression and a "panic disorder"). By developing a hypothetical that was intended to account for plaintiff's underlying conditions, the administrative law judge adequately accounted for plaintiff's problems with concentration, persistence and pace.

Finally, even if there were a problem with the administrative law judge's hypothetical question, any objection has been forfeited because plaintiff did not raise such an objection during the hearing.  Ragsdale v. Shalala, 53 F.3d 816, 819 (7th Cir. 1995) ("[Plaintiff] did not ask the expert if and to what extent he had considered [his] tinnitus, hearing loss, or medical side effects in rendering his vocational assessments. . . . Ragsdale's failure to protect his own interests below cannot constitute sufficient ground for us to cast aside a prior opinion.").  Plaintiff was represented by counsel at the hearing and his counsel could have questioned Noll, posed his own hypothetical questions, requested the administrative law judge to pose interrogatories or otherwise challenged Noll to explain and expand upon his response to the administrative law judge's hypothetical.  Id.  However, he failed to do so. Having been given such an opportunity, plaintiff cannot obtain a remand after receiving an unfavorable ruling simply by pointing out problems now that may well have been cured had he identified them during the hearing.

B. The Vocational Expert's Testimony Had an Adequate Foundation

Plaintiff also contends that Noll failed to provide an adequate explanation for his opinion that despite the limitations identified by the administrative law judge plaintiff was

capable of working as an inspector, tester, sorter, machine operator or packager. Plaintiff contends that many of the limitations identified by the administrative law judge are not described in the Dictionary of Occupational Titles or its companion publication, the Selective Characteristics of Occupations. Moreover, neither the administrative law judge nor Null provided much explanation for how the limitations affected plaintiff's capacity to work. Accordingly, plaintiff contends that there is no basis for evaluating whether he is actually capable of performing the jobs Noll identified.

Plaintiff's complaint that Noll's testimony allegedly lacked an adequate foundation comes too late. It is well-established that claimants cannot present arguments regarding a vocational expert's testimony for the first time in the district court. Any objection to the reasoning behind or the foundation supporting a vocational expert's opinion must be raised during the hearing. Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002) ("When no one questions the vocational expert's foundation or reasoning, an [administrative law judge] is entitled to accept the vocational expert's conclusion[.]"). Although there is a limited exception to this waiver rule for situations in which the vocational expert's testimony conflicts with the Dictionary of Occupational Titles, plaintiff does not contend that there is any such conflict in this case. The fact that certain jobs and limitations identified by Noll are not found in either the Dictionary of Occupational Titles or the Selective Characteristics of Occupations does not show the existence of a *conflict* that requires further inquiry under Overman v. Astrue, 546 F.3d 456 (7th Cir. 2008).

Finally, although recent court of appeals opinions have raised questions about the

14

validity of *all* vocational expert testimony until the <u>Dictionary of Occupational Titles</u> is updated, <u>Forsythe v. Colvin</u>, 813 F.3d 677, 680-81 (7th Cir. 2016), the court has yet to overturn an administrative law judge's denial of an appeal on that basis alone. Nor has the court overturned <u>Donahue</u>'s requirement that the claimant raise objections to the foundation for the vocational expert's testimony at the time of the social security hearing. Accordingly, it was not unreasonable for the administrative law judge in this case to rely on the vocational expert's opinion regarding the type of jobs plaintiff could perform and the number of such jobs in the community.

ORDER

IT IS ORDERED that plaintiff Joshua Ray Lanigan's motion for summary judgment, dkt. #9, is DENIED. The decision denying benefits is AFFIRMED. The clerk of the court is directed to enter judgment in favor of defendant, Carolyn W. Colvin, Acting Commissioner of Social Security, and close this case.

Entered this 11th day of May, 2016.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

15